UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BARBARA QUATROY          *     CIVIL ACTION: 08-1582

VERSUS                   *     JUDGE IVAN L.R. LEMELLE

CYRIL QUATROY, ET AL     *     SECTION "B"

                         *     MAGISTRATE JUDGE JOSEPH WILKINSON


ORDER AND REASONS

Before the Court is Plaintiff's Motion to Remand. (Rec. Doc.7). After review of the pleadings and applicable law, and for the reasons that follow,

IT IS ORDERED that Plaintiff's Motion is DENIED.

BACKGROUND

Barbara Quatroy ("Plaintiff") filed her action against defendants on February 28, 2008 in the 24th Judicial District Court for the Parish of Jefferson. Southern National Life Insurance Company ("Defendant"), timely removed this case with the consent of the other defendants on April 10, 2008 contending the suit upon life insurance plan is governed by ERISA preemption. Plaintiff seeks to recover the life insurance benefits from the death of her husband, Jay Quatroy. (Rec. Doc. 7). Defendant SNL claims that Jay Quatroy was ineligible under the life insurance plan at the time of his death. (Rec. Doc. 8). SNL refused to pay plaintiff the policy and subsequently returned the premiums paid for Jay Quatroy's life insurance policy to Cyril Quatroy, Jay Quatroy's co-

owner of Quatroy Sheet Metal Works LLC ("QSMW").  (Rec. Doc. 8).
Plaintiff contends that this court lacks subject matter
jurisdiction.  (Rec. Doc. 7).

## DISCUSSION

In motions to remand, the removing party bears the burden of
proving that federal jurisdiction is present and that removal was
proper.  *See Manguno v. Prudential Prop. and Cas. Co.*, 276 F.3d
720, 723 (5th Cir. 2002).  Federal courts have original jurisdiction
over cases that raise a federal question, or cases "arising under
the Constitution, laws, or treaties of the United States."  28
U.S.C. § 1331.  Thus, removal of these cases is proper under 28
U.S.C. § 1441(a).

"It is long settled law that a cause of action arises under
federal law only when the plaintiff's well-pleaded complaint raises
issues of federal law."  *Metro. Life Ins. Co. v. Taylor*, 481 U.S.
58, 63 (1987); (*citing Gully v. First Nat'l Bank*, 299 U.S. 109
(1936)).  However, there is a corollary to the well-pleaded
complaint rule: "Congress may so completely pre-empt a particular
area that any civil complaint raising this select group of claims
is necessarily federal in character."  *Metro. Life. Ins.*, 481 U.S.
at 63-64.

The Employee Retirement Income Security Act ("ERISA") was
enacted to "protect ... participants in employee benefit plans and
their beneficiaries ... and by providing for appropriate remedies,

sanctions, and ready access to Federal courts." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987); (quoting 29 U.S.C. § 1001(b)).   An employee welfare benefit plan is defined as: "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such a plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) ... benefits in the event of sickness, accident, disability, death..."   29 U.S.C. § 1002.

To determine whether removal was proper, we must first decide if the plan in question is in fact an ERISA plan.   If the plan is governed by ERISA, then we must ensure that Plaintiff's state law claims are preempted by ERISA.

**A. Whether the life insurance plan is governed by ERISA.**

The United States Court of Appeals for the Fifth Circuit restated its three part test originally stated in *Meredith v. Time Ins. Co.* in a recent ERISA case: "To be an ERISA plan, the arrangement must be (1) a plan, (2) not excluded from ERISA coverage by the safe-harbor provisions established by the Department of Labor, and (3) established or maintained by the employer with the intent to benefit employees." *Shearer v. Southwest Services Life Ins. Co.*, 516 F.3d 276, 279 (5th Cir. 2008); (*citing Peace v. Am. Gen. Life Ins. Co.*, 462 F.3d 437, 439 (5th Cir.

3

2006); *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993)).

**1.  Establishing that a plan exists.**

The first factor is that an ERISA plan exists. *Id.*  In the Fifth Circuit an ERISA plan is established in situations analogous to the one presented here where there are two co-owners and at least one other employee: "Corona's employee benefit plan is an ERISA plan because it does not solely cover the Vegas, co-owners of the company; rather, it includes their employees, and Corona employs at least one other person besides the Vegas." *Vegas v. Nat'l Life. Ins. Services, Inc.*, 188 F.3d 287, 294 (5th Cir. 1999).

However, the issue of whether the life insurance plan was in existence at the time Jay Quatroy died, presents a more difficult issue.  For example, in one case where Plaintiffs argued that "the insurance company's rescission and voiding, *ab initio*, of the group policy in its entirety demonstrates that there is not now a plan under ERISA" this fact was not dispositive to the court's existence of a plan analysis.  *Longoria v. Cearley*, 796 F. Supp. 997, 1004 (W.D. Tex. 1992).

Because there is no case law from this circuit that deals directly with the issue of whether or not the employee benefit plan was in existence at the relevant time, we look to how other federal courts have handled this issue.  The District Court from the Middle District of Alabama dealt with this issue in a case where

Plaintiffs argued that their health insurance coverage had been
terminated, thus there could not be complete preemption of their
state law claims as no health plan was in existence at the time
damages accrued. *Jones v. LMR Int'l*, 351 F. Supp. 2d 1308, 1312
(M.D. Ala. 2005). However, the court did not find this argument
persuasive. *Id.* at 1313-14. The court held that because the plan
had been established as an ERISA plan, this was enough to allow for
complete preemption of the state law claims, despite the fact that
this ERISA plan had lapsed: "Under the plain language of the
statute, because the plan was established as an ERISA plan, ERISA
governs claims made under the plan, even though the plan was not
maintained after a certain point." *Id.* at 1314; (*citing Adair v.
Johnston*, No. 03-T-731-N, 2003 WL 23469844 at *3 (M.D. Ala. Oct.
24, 2003)). This outcome was affirmed by the United States Court
of Appeals for the Eleventh Circuit on appeal: "Because a covered
plan is defined in the disjunctive, the plain language of the
statute would seem to suggest that ERISA preemption applies to
actions under ERISA plans that were originally established by an
employer even if those plans are now defunct." *Jones v. LMR Int'l,
Inc.*, 457 F.3d 1174, 1178 (11th Cir. 2006).

The United States Court of Appeals for the Ninth Circuit
reached a different conclusion on the relevant time period for the
existence of a plan. *Miller v. Rite Aid Corp.*, 504 F.3d 1102 (9th
Cir. 2007). In *Miller*, the court found that the plaintiffs' mother

was not covered by a life insurance plan at the time of her death as the company had terminated its life insurance plan. *Id.* at 1107. Additionally, Miller was not eligible for the new life insurance plan that the company established in place of the former plan. *Id.* at 1108. Thus, because Miller was not considered a participant under either life insurance plan at the time of her death, her estate could not bring a suit under ERISA. *Id.* The Ninth Circuit looked at the status of coverage at the time of death to determine that no ERISA plan existed: "Just as we look to the time of the employee's death to determine whether he is a 'participant,' we look to the time of death to determine whether the employee's children are 'beneficiaries.'" *Id.*

Although the parties here disagree on whether or not a life insurance plan existed at the time of Jay Quatroy's death, when the plan was initially established it covered three employees of QSMW including the two co-owners of the company Jay and Cyril Quatroy. (Rec. Doc. 8). The documents filed in this case do not provide information on who this third employee was. However, the fact that at least one other employee was covered under the life insurance benefit plan besides the two co-owners is enough to find that the plan when established was governed by ERISA. *See Vegas*, 188 F.3d at 294.

Whether or not a life insurance plan for Jay Quatroy was in place at the time of his death is a question to be answered at

trial.   Although  the  Ninth  Circuit's  analysis  in  *Miller*  is persuasive  that  an  ERISA  plan  must  be  in  place  at  the  time  of death,  that  case  can  be  distinguished  as  there  was  a  definitive termination  of  the  company's  life  insurance  policy  that  plaintiff was  aware  of.   Here,  this  is  not  the  case.   When  and  if  the  SNL life  insurance  policy  was  terminated  is  a  question  of  fact.   Thus, for  purposes  of  remand  the  district  court's  analysis  in  *Jones*  is persuasive  in  finding  that  because  when  established  the  SNL  life insurance  plan  was  an  ERISA  plan,  the  first  *Meredith*  factor  that  a plan  existed  has  been  met.   In  further  support  of  the  existence  of a  plan,  Plaintiff  argued  in  her  complaint  that  the  life  insurance plan  was  still  in  existence  at  the  time  of  death,  and  in  the alternative  that  the  contract  should  be  reformed  by  the  court. (Rec. Doc. 1).

## 2. Life insurance plan does not fall within the Department of Labor's safe-harbor provision.

The  second  factor  of  the  *Meredith*  test  "asks  whether  the  plan falls  within  the  safe-harbor  provision  promulgated  by  the Department  of  Labor."   *Meredith*,  980  F.2d  at  355.   This  exemption provides  that  a  plan  is  not  an  ERISA  plan  if:  "(1)  the  employer does  not  contribute  to  the  plan;  (2)  participation  is  voluntary; (3)  the  employer's  role  is  limited  to  collecting  premiums  and remitting  them  to  the  insurer;  *and*  (4)  the  employer  received  no profit  from  the  plan."   *Id.*   Thus,  if  all  these  factors  are  met  the

7

plan falls within the safe-harbor provision and is not an ERISA plan.

Both parties confuse the test used in the second *Meredith* factor. Plaintiff argues that the plan is exempt from ERISA because Cyril Quatroy as co-owner of the QSMW received a profit from the plan in the form of returned premiums and a reduction in taxes owed. (Rec. Doc. 7). Defendant then argues that Plaintiff's argument that the employer profited from the plan is unsupported by the facts and that tax consequences are not relevant to an ERISA plan. (Rec. Doc. 8). A finding that all four factors have been met would mean that the plan is not an ERISA plan which is the argument Plaintiff attempts to make. However, by making an argument that negates the fourth factor, Plaintiff has essentially argued that this plan is not exempt from ERISA while defendant has argued the opposite. (Rec. Doc. 7); (Rec. Doc. 8).

Although not provided with full information on the insurance plan in question, we only need to go as far as the first factor within the safe-harbor provision test to determine that the plan in question does not qualify as exempt from ERISA. QSMW paid the premiums of the plan, this means that factor one (the employer does not contribute to the plan), has not been met. This is analogous to the finding of the court in *McNeil v. Time Ins. Co.*, where the employer paid the premiums of the insurance plan. 205 F.3d 179, 190 (5th Cir. 2000). Thus, the plan did not fall within

the safe harbor provision and the Plaintiff's state law claims were preempted by ERISA. *Id.* at 191; *See also House v. Am. United Life Ins. Co.*, 499 F.3d 443, 449 (5th Cir. 2007) (finding "to qualify as an ERISA plan, the plan cannot fall within the Department of Labor's safe harbor exclusion.").

**3. Plan was established by any employer for the purpose of providing benefits.**

The third factor of the *Meredith* test provides that the plan must (1) be established or maintained by an employer, and (2) with the purpose of providing benefits to its employees. Jay Quatroy and Cyril Quatroy as co-owners of QSMW are considered the employers here and because there was at least one other employee, they are also participants in the plan. *See Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 20 (2004). Thus, because QSMW established the life insurance plan for the benefit of themselves and their employee, the third element is also satisfied.

Therefore, all three elements of the *Meredith* test are satisfied in this case qualifying the life insurance plan in question as an ERISA plan.

**B. Whether the ERISA plan preempts Plaintiff's state law claims.**

As we have determined that the life insurance plan at issue is governed by ERISA, we must next ensure that Plaintiff's state law claims are preempted by ERISA. There are two ways in which ERISA preempts state law claims. *Gulf Coast Plastic Surgery, Inc. v.*

*Standard Ins. Co.*, — F. Supp. 2d ----, 2008 WL 2308991, *2 (E.D. La. 2008).  First, there is complete preemption pursuant to claims covered under ERISA § 502(a).  *Id.*; 29 U.S.C. § 1132(a)(1)(B). Second, there is conflict preemption which "provides an affirmative defense to state law claims and involves ERISA § 514(a)."  *Id.* at *3; 29 U.S.C. § 1144(a).

Breach of contract claims are consistently found to be within the realm of ERISA § 502(a) which provides that: "[a] civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B). In a case dealing with contract claims against an insurer, the court held that Plaintiffs "clearly intended to and do state a contract claims against Aetna based on their insurance contract.  Because § 502(a) provides for a breach of contract claim against an ERISA plan by a participant or beneficiary, the Bakers' state law contract claims could have been brought pursuant to ERISA, and is therefore completely preempted.  Removal was proper..." *Duchesne-Baker v. Extendicare Health Services, Inc.*, No. 02-0590, 2003 WL 22327192, * 3 (E.D. La. Oct. 8, 2003).

Here, Plaintiff's claims are for breach of contract and bad faith. (Rec. Doc. 1).  Plaintiff is the beneficiary of her late husband's life insurance plan and she is seeking to obtain benefits

from this plan.   Thus, like the plaintiffs' contract claims in *Duchesne-Baker,* Plaintiff's claims here would fall under ERISA § 502(a)(1)(B) requiring complete preemption of state law claims.

In addition there is a two-part analysis used to determine if complete preemption of a Plaintiff's state law claims is proper. *Blum v. Spectrum Rest. Group, Inc.*, No. 4:02-CV-92, 2003 WL 1889036 (E.D. Tex. April 14, 2003).   In *Blum*, the court asked first whether Plaintiff's state law claims address an area of exclusive federal concern, and second, whether Plaintiff's state law claims directly affects the relationship between traditionally ERISA entities.  *Id.* at *3-6.   In regard to part one of the analysis, the court found that "[i]n factual contexts involving the payment and processing of claims, the Fifth Circuit has consistently held that the state law claims asserted by Mrs. Blum are preempted by ERISA-breach of contract,   fraud,   negligent   misrepresentation,   equitable estoppel...."  *Id.* at *6.   In regard to part two of the analysis, the court listed the traditional ERISA entities as "the employer, the  plan  and  its  fiduciaries,  and  the  participants  and beneficiaries."  *Id.*

We  have  already  determined  here  that  the  state  law  claims asserted by Plaintiff are in areas of exclusive federal concern as they are breach of contract claims.  Further, the parties involved in  the case are all traditional ERISA entities; Barbara Quatroy is the beneficiary, Cyril Quatroy and QSMW are the employers and SNL

is the fiduciary of the plan.   Thus, Plaintiff's claims for benefits under the plan are completely preempted by ERISA § 502.

## CONCLUSION

There is little case law available on what happens, as in this case, when the parties dispute whether a plan existed at the relevant time (here when Jay Quatroy died).  However, that the plan when first established was governed by ERISA supports removal of a case based on ERISA preemption.  Because  Plaintiff's state law claims are preempted by ERISA, Plaintiff's Motion to Remand is Denied.

Additionally, some defendants have been successful in first removing a case due to ERISA preemption and subsequently having the case dismissed "because the complaint still states on its face only a state law claim" and according to traditional preemption principles this allows for dismissal. *Ackerman v. Fortis Benefits Ins*. Co., 254 F. Supp. 2d 792, 814 (S.D. Ohio 2003).

In *Ackerman*, the court undertook a lengthy analysis of the problems this presented and the split among the federal courts on what to do when presented with the question "whether a state law claim, once re-characterized as an ERISA claim, must be dismissed in federal court, because the complaint still states on its face only a state law claim, or whether the Plaintiff can proceed, albeit subject to the constraints of ERISA (with or without filing an amended complaint to expressly state the ERISA claim)." *Id*.

The court in *Ackerman* decided that it would re-characterize Plaintiff's breach of contract claim as an ERISA § 502(a) claim instead of giving the Plaintiff leave to amend her complaint. *Id.* at 818.  However, the court did acknowledge "in the past that granting Plaintiff leave to amend to state expressly an ERISA claim is a 'prevailing practice...'" but that this practice was not a requirement.  *Id.; citing Erbaugh v. Anthem Blue Cross and Blue Shield*, 126 F. Supp. 2d 1079, 1082 (S.D. Ohio 2000).

Fairness dictates that Plaintiff be given thirty (30) days leave to amend her complaint to expressly include a claim for benefits under ERISA § 502(a).  Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Remand is **DENIED,** but that Plaintiff is **GRANTED** thirty (30) days leave to amend her complaint.

New Orleans, Louisiana this 20th day of August.

_____
UNITED STATES DISTRICT JUDGE